# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 21-cr-95 (MJD/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| David Vue, | |
| Defendant. | |

On April 15, 2021, a grand jury indicted Defendant David Vue ("Defendant" or "Vue") on a count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 2); Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 3); Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 4); and Felon in Possession of Firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 5). (Dkt. 1.)

This matter is before the Court on Defendant's Motion to Suppress Any Statements Made by Defendant (Dkt. 19) ("Motion").[1] This case has been referred to the

---

[1] Defendant also filed a Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches (Dkt. 20), but withdrew that motion upon reviewing the Government's response and after consulting with his attorney. (Dkt. 52; *see also* Dkt. 54 at 6:20-25, 7:1-5; Dkt. 40 at 5.) (All page number citations are to the CM/ECF

undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  The Court held a hearing on the Motion on October 12, 2021, however due to a failure of the recording device during that hearing, the Court held a second hearing on the Motion on February 28, 2022.  (*See* Dkts. 39, 52.) Thomas Hollenhorst, Assistant United States Attorney, appeared on behalf of the United States of America at the hearings and Thomas Shiah, appointed under the Criminal Justice Act, appeared on behalf of Vue, who was present at the hearings.  (*Id.*)  Vue filed a post-hearing brief in support of the Motion on March 21, 2022 (Dkt. 55) and Plaintiff United States of America ("the Government") filed a post-hearing opposition brief on April 16, 2022 (Dkt. 61).  On April 25, 2022, Vue informed the Court via email that he would not be filing a post-hearing reply brief.  Accordingly, the matter is ripe for decision.  For the reasons set forth below, the Court recommends that Defendant's Motion be denied.[2]

---

pagination unless otherwise noted, and all citations to the transcript of the February 28, 2022 hearing are in page:line format.)

[2]     At the February 28, 2022 hearing, Defendant's counsel stated that there were two categories of statements at issue in the Motion—the first category constituting the statements made on February 26, 2020 and the second category constituting the statements made on February 27, 2020.  (*See* Dkt. 54 at 7:6-13.)  Based on the Government's representation that it would not be using any statements obtained on February 27, 2020, Defendant withdrew the Motion as it relates to statements obtained on February 27, 2020.  (*Id.* at 7:14-18, 23:13-17.)  Accordingly, this Report and Recommendation does not address the statements obtained on February 27, 2020 as that issue is now moot.

## I.   BACKGROUND

At the February 28, 2022 hearing, Sergeant Chao Lee of the Minneapolis Police Department testified about a February 26, 2020 interview of Vue, on which date Sergeant Lee was working as an officer on the Safe Streets Task Force. (Dkt. 54 at 12:1-36:13.) Sergeant Lee testified that the entire interview was recorded and then broken into four separate and sequential data files due to data storage availability.[3] (*Id.* at 14:20-15:7.) The Court received Government Exhibit 2, constituting the four sequential files, at the October 12, 2021 hearing. (*See id.* at 14:22-25.) The Government represented at the hearing that it would not be using any statements in the third and fourth data files of the interview recording in its case in chief at trial. (*Id.* at 8:1-18, 22:15-25, 23:1-17.) As a result, Defendant withdrew the Motion as it relates to the third and fourth data files of the February 26, 2020 interview recording. (*See Id.*; *see also* Dkts. 55, 61.) Accordingly, this Report and Recommendation does not discuss the statements in the third and fourth data files as those issues are moot.

At the February 28 hearing, Sergeant Lee testified that officers had been investigating Vue as a person that may have been selling and using methamphetamine, and on February 26, 2020, he effectuated a search warrant for Vue's home and arrested Vue on the same day. (Dkt. 54 at 13:11-17, 24:5-25, 25:1-7.) Sergeant Lee then

---

[3]   The parties used the sequential numbering format of "first" "second" "third" and "fourth" when referencing the interview recording. (*See* Dkt. 54 at 8:12-24; *see also* Dkt. 61.) The interview recording begins at the first data file and ends at the fourth data file. The Court also uses this sequential numbering when referencing the data files.

transported Vue to the Safe Streets Task Force Office in Northeast Minneapolis ("SSTF Office") for a *Scales* interview.[4]  (*Id.* at 13-14:5, 26:11-17.)  Sergeant Lee described the SSTF Office as an interview facility that is set up with three interview rooms which allow for audio and video recordings and that Vue's interview was conducted in one of the rooms given the *Scales* requirement that such interviews be recorded.  (*Id.*)  Sergeant Lee described the room Vue was interviewed in as a secure room with an entry door that had a lock, about 12 feet square with no windows, and stated that inside the room was a desk, a chair on one side of the desk, two chairs on the other side, and pictures of Vue on the wall of the room, described as "pictures of evidence from the buys," that were collected during the officers' investigation.  (*Id.* at 14:16-19, 18:20-23, 27:18-25, 28:1-7.)

Sergeant Lee and Agent Andy Mento, an agent with the Federal Bureau of Investigation, conducted Vue's interview.  (*Id.* at 15:8-9.)  Sergeant Lee testified that he was in plain clothes during the interview and had a weapon in his holster at his side that was not visible to Vue.  (*Id.* at 15:10-16:3.)  Sergeant Lee did not know whether Agent Mento had a firearm with him during the interview but stated that Vue was never informed that either he or Agent Mento had a firearm on them.  (*Id.* at 16:15-21.)

Sergeant Lee testified that he fastened the handcuffs on Vue's wrist to the desk upon entering the interview room due to his experience with arrested individuals

---

[4]     In *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994), the Minnesota Supreme Court announced a new law requiring that all custodial interrogations, including any information about rights, any waiver of those rights, and all questioning be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention.

attempting to flee the room when no officers were present and because Vue was locked in the room alone prior to the interview commencing. (*Id.* at 18:7-25, 26:18-24.) Sergeant Lee testified that Vue was in the interview room alone for about an hour before the interview commenced, however, Sargent Lee asserted that Vue was in the room for about seventeen minutes after his after his recollection was refreshed using a report prepared by Agent Mento. (*Id.* at 14:6-12, 26:22-25, 27:1-5, 29:6-9, 32:12-25, 33-34:2, 35:25, 36:1-9.) Vue was not read his *Miranda*[5] rights at the time of his arrest or during the time he was waiting in the interview room. (*Id.* at 29:10-17, 30:15-24.)

Before Vue was read his *Miranda* rights, Agent Mento conducted a "softening up process" where he informed Vue of the reasons he was arrested and that officers had observed four separate buys that Vue was involved in. (*Id.* at 19:4-17, 20:1-4.) No questions were asked of Vue during this process and the officers informed Vue that they were not asking him any questions. (*Id.* at 19:22-24, 31:7-21.) Sergeant Lee described the "softening up process" as one where law enforcement officers inform the defendant why he or she is being arrested and the potential charges the defendant faces. (*Id.* at 19:18-21, 31:7-11.) According to Sergeant Lee, the pictures of Vue on the wall aided in making "sure that [Vue] kn[ew] what he's looking at." (*Id.* at 28:2-14.) Sergeant Lee agreed that having pictures of a defendant on the wall of an interview room was "pretty rare," but stated that the pictures on the wall were routine surveillance pictures and that

---

[5]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

they were not there to "shock and awe" Vue in any way. (*Id.* at 28:22-25, 29:1-5, 34-35:16.)

Sergeant Lee testified that Vue was advised of his *Miranda* rights before any questions were asked of him, that Vue did not hesitate to waive his *Miranda* rights, and that Vue answered questions freely during the following seventeen minutes without any threatening conduct on the part of the officers. (*Id.* at 20:5-25, 21-22:3.) Vue then requested a bathroom break, at which time the handcuffs were unfastened. (*Id.* at 22:4-7, 34:3-9.) Vue returned to the interview room about a minute later, was not handcuffed for the remainder of the interview, and ultimately was released after the interview. (*Id.* at 22:4-14, 23:8-12, 34:2-12.)

According to Sergeant Lee, Vue did not appear intoxicated or under the influence of drugs when arrested, however, he did not know whether Vue had used methamphetamine on that day or what his state of mind was, but Vue appeared to be tracking questions, answered cogently during the interview, and his responses did not appear incoherent. (*Id.* at 16:25, 17:1-12, 25:8-25, 26:1-10.) According to Sergeant Lee, no threats were ever made to Vue during the interview and Vue was free to attend to bodily needs and indeed, took a bathroom break. (*Id.* at 17:16-25, 18:1-2.)

## II.   DISCUSSION

Vue seeks suppression of the statements at issue and argues that he did not voluntarily and knowingly waive his *Miranda* rights because his will was overborne by a

6

coercive environment and because he was under the influence of methamphetamine. (Dkt. 55 at 1-4.)

The Government contends that Vue knowingly, intelligently, and voluntarily waived his *Miranda* rights and provided a voluntary statement. (Dkt. 61 at 7.) The Government argues that Vue's statements were voluntary because Agent Mento read each of the *Miranda* rights to Vue, who initialed each right on a rights warning certificate; the environment in which the interview proceeded and the officers' conduct were not coercive; and Vue was in his mid-thirties at the time of the interview and was well-versed in his *Miranda* rights given his extensive criminal record. (*Id.* at 5-8.)

A.   **Legal Standard**

"[*Miranda*] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (citing *Miranda*, 384 U.S. at 444). Thus, *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444). "Interrogation under *Miranda* includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the

7

suspect.'" *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). A defendant may waive his *Miranda* rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444.

*Miranda* has four requirements that a suspect subject to custodial interrogation must be advised about prior to any questioning. The suspect must be warned that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. Although the four requirements must be met, the Supreme Court has held that no precise language is dictated. *Florida v. Powell*, 559 U.S. 50, 60 (2010). Rather, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Id.* (alteration in original) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)).

Once an individual is provided his *Miranda* rights, his statements may be used if he knowingly and voluntarily waives those rights. *See United States v. Bell*, 477 F.3d 607, 612 (8th Cir. 2007). A suspect in custody may waive his *Miranda* rights if: (1) "the relinquishment of the right [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception;" and (2) "the waiver [was] made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The government bears the burden of proving, by a preponderance of the

evidence, the validity of a *Miranda* waiver.  *See Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *see also United States v. Figueroa-Serrano*, 971 F.3d 806, 814 (8th Cir. 2020), *cert. denied*, No. 20-7528, 2021 WL 2637914 (U.S. June 28, 2021).  The Court must examine the totality of the circumstances in determining whether a waiver of *Miranda* rights is valid.  *Moran, 475 U.S. at 421*.

There is no dispute that Vue was in custody following his arrest and during the interview at the SSTF Office.  (*See* Dkt. 61 at 5 ("Following the interview, the defendant was released from custody.").)  It is also undisputed that Agent Mento did not question Vue during the "softening up process" and that Vue was read his *Miranda* rights before the officers began asking him any questions.  Therefore, the issue before the Court is whether Vue voluntarily and knowingly waived his *Miranda* rights.

**B.   Voluntariness of Vue's Statements**

Vue argues that his statements were not voluntary because the interview was conducted in a coercive environment.  (Dkt. 55 at 4.)  He specifically identifies the fact that the interview room was small and windowless, approximately 12 feet square; he was handcuffed; while it is not clear whether Agent Mento was armed, Sergeant Lee had his weapon during the interview; there were surveillance pictures of Vue on the wall; Vue was made to wait alone in the interview room for between seventeen minutes to about an hour; and prior to administering his Miranda rights, Agent Mento conducted a "softening up process," informing Vue of the evidence against him and documenting the four controlled buys involving Vue.  (*Id.* at 2-3.)

"In considering whether a [statement] was voluntary, the determinative question is whether the [statement] was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998) (citation omitted). This inquiry requires courts to assess "the conduct of the law enforcement officials and the suspect's capacity to resist any pressure." *Id.* (citing *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990), *cert. denied*, 502 U.S. 829 (1991)). More specifically, a court considers, "among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (citing *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)). The Eight Circuit has found that "[t]actics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices, do not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne." *United States v. Magallon*, 984 F.3d 1263, 1284 (8th Cir. 2021) (cleaned up).

At a starting point, Vue does not provide any authority to support his arguments that the environment and nature of the interview was coercive such that it overbore his will. The Court has carefully reviewed the recording.[6] As stated above, Agent Mento did

---

[6] Vue has not argued that the interview recording was incomplete or altered.

not ask Vue any questions during the "softening up process" and the recording shows Agent Mento repeatedly informed Vue that he was not asking him any questions and Vue did not make any incriminating statements during that phase. (See Gov't Ex. 2, First and Second Files.) During this time, Agent Mento informed Vue that he was under arrest, explained how the federal system works to Vue, described the evidence against Vue and possible sentencing outcomes, maintained a conversational tone, and did not make any threats or promises to Vue. (*See id.*) This process did not overbear Vue's will so as to render his statements involuntary. *See United States v. Roy*, No. 15-cr-306 (JRT/LIB) (1), 2016 WL 742685, at *3-4 (D. Minn. Jan. 25, 2016) (denying defendant's motion to suppress and finding that the officers' statements describing the charges against defendant and "the status of the investigation into his activities . . . did not constitute the functional equivalent of interrogation for the purposes of *Miranda*"); *see also United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005) ("Whether a particular statement constitutes an interrogation depends upon the circumstances of each case, but we generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities."); *Dowell v. Lincoln Cty., Mo.*, 762 F.3d 770, 776 (8th Cir. 2014) ("An officer, however, may make a truthful statement regarding a possible punishment without it overbearing a defendant's will."); *Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) ("A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will . . .") (quoting *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978)) (cleaned up); *United States v. Gallardo-*

11

*Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001) (upholding statements as voluntary because the conduct of the police officers was not calculated to overbear defendant's will where the officers told defendant he would receive a life sentence when the sentence was for 32 years); *United States v. Mims*, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding defendant's statement was voluntary, where, among other factors, the interview was conducted in a reasonable, conversational tone).  Any implication by Agent Mento that Vue's cooperation may lead to leniency does not also render his statements involuntary.  *See United States v. Astello,* 241 F.3d 965, 968 (8th Cir. 2001) ("In any event, a promise of leniency does not necessarily make a statement involuntary."). Moreover, the Eight Circuit has explained that "interrogation of a suspect will involve some pressure because its purpose is to elicit a confession."  *Sanchez*, 614 F.3d at 883-84.

    As to the interview room being windowless and 12 feet square in size with surveillance pictures of Vue on the wall, the Court finds that the environment and tactics used by the officers do not rise to the level of coercion that would have rendered Vue's statements involuntary.  *See id.* at 885-86 (finding the display of a graphic photo of the victim was not extreme and did "not rise to the level of coercive police conduct considered prohibited" given a lack of testimony that the picture display was combined with threats); *see also United States v. LeBrun*, 363 F.3d 715, 718-26 (8th Cir. 2004) (en banc) (finding the defendant's statements were voluntary despite the lack of a Miranda warning where the officers interviewed the defendant for approximately one hour in a small, windowless room that had enlarged photographs of the defendant on the wall of the room, and used psychological ploys during the course of the interview to facilitate a

12

confession, but did not shout at or use physical force against the defendant); *United States v. Ladoucer,* Crim. No. 07-165(1) ADM/JSM, 2007 WL 3375223, at *16 (D. Minn. Aug. 30, 2007) ("[T]he fact that the interview took place in an eight-by-eight foot, cell-like room does not warrant a finding of coercion, nor does the location of the agents in relation to [defendant] and the door during the interview"); *Fox v. Bezio*, No. 10-CV-2986 (JG), 2011 WL 837158, at * (E.D. N.Y. March 7, 2011) (finding that the defendant voluntarily and knowingly waived his Miranda rights even though before being questioned, he was shown pictures of the decedent whom he allegedly murdered).

Vue argues that because Sergeant Lee had a weapon during the interview and because he was alone in the interview room for seventeen minutes to an hour, he was in a coercive environment, and as such, his statements should be suppressed. (Dkt. 55 at 2-3.) However, Sergeant Lee testified, and the interview recording shows, that his weapon was concealed during the interview. (Dkt. 54 at 15:10-16:14; see generally, Gov't Ex. 2.) The recording also shows that Agent Mento did not have any visible weapons and the officers did not inform Vue that they had weapons on them. (Dkt. 54 at 16:15-21; see generally, Gov't Ex. 2.) Vue has not provided any evidence to show otherwise. Accordingly, and given the totality of the circumstances, the Court cannot conclude that Vue's will was overborne by the presence of a weapon he did not know about, or that being alone in the interview room for seventeen minutes to an hour before Sergeant Lee and Agent Mento arrived warrants suppression of his statements. *See United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005) (affirming denial of defendant's suppression motion where the defendant had been in custody for approximately three

13

hours before being advised of his Miranda rights); *see also United States v. Nunez-Medina*, Crim No. 12-222 MJD/AJB, 2012 WL 6840113, at *3, 7 (D. Minn. Oct. 31, 2012) (finding defendant's statements were voluntarily made where, among other things, no weapons were displayed during the interviews); *United States v. Washington*, Crim. No. 10-162 (ADM/SRN), 2010 WL 4884501, at *5, 10 (D. Minn. Aug. 24, 2010) (denying defendant's motion to suppress where although the officers had weapons that were visible to the defendant during the interview, they never took the weapons out of their holsters).

The Court also finds that Vue being handcuffed for a portion of time during the interview does not rise to the level of coercion to render his statements involuntary. *See Sanchez*, 614 F.3d at 880 (finding suppression of the defendant's statement was unwarranted even though the defendant was handcuffed when officers interviewed him); *see also United States v. Yellow*, No. 17-cr-282 (MJD/LIB), 2018 WL 1189340, at *7 (D. Minn. Feb. 6, 2018) ("[T]here is no indication in the record that being handcuffed in the vehicle [which was where law enforcement conducted the interview for an hour and forty-four minutes] with the officers present intimidated Defendant or hindered Defendant's capacity to resist pressure.").

Additionally, prior to reading Vue his *Miranda* rights, Agent Mento confirmed that Vue understood and could read the English language. (Gov't Ex. 2, Second Data File at 2:20:34.) Agent Mento then read Vue his *Miranda* rights and confirmed that Vue understood his rights. (*Id.* at to 2:20 to 2:22.) Vue acknowledged that he understood his

14

rights and signed the "Advice of Rights" form.  (*Id.*; *see also* Gov't Ex. 1 (Advice of Rights form).)  The Court also gives weight to the Government's assertion (which Vue has not disputed) that Vue is in his mid-thirties and has had prior experience with the legal system.  *See Gallardo-Marquez,* 253 F.3d at 1123 (finding confession was voluntary where the defendant was of average intelligence and had prior experience with law enforcement).

In sum, based on the totality of circumstances, the Court finds that Vue voluntarily waived his *Miranda* rights.  There is no indication on the current record that Vue's statements were taken by force, threat, violence, or express or implied promises of any kind or that Vue's will had been overborne by any conduct of law enforcement or by a coercive environment.

**C.    Knowing and Intelligent**

The Court next considers whether Vue's waiver of his rights was knowingly and intelligently made.  *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011).

Vue argues that "[a]fter months of surveillance, [Sergeant Lee] knew that Mr. Vue was a drug user," received reports of Vue's activities on a regular basis that informed him of Vue's regular drug use, and although Sergeant Lee "may not have had any specific knowledge that Mr. Vue had used methamphetamine that day, . . . he knew it was a distinct possibility. . . . [but] did nothing to determine whether Mr. Vue had been using that day or how it might be affecting him."  (Dkt. 55 at 3-4.)  Vue, however, did not offer any evidence to show that he was under the influence of methamphetamine or any other

15

substance during the interview, nor does he provide any authority for the proposition that a "distinct possibility" created some kind of additional obligation on the officers. Sergeant Lee testified that Vue did not appear intoxicated or under the influence of any drugs. (Dkt. 54 at 16:25-17:4.) Sergeant Lee further testified that Vue appeared to be tracking and answering questions cogently, and that Vue's responses did not appear to be incoherent in any way. (*Id.* at 17:5-12.) And the interview recording does not suggest that Vue was intoxicated. (*See* Gov't Ex. 2.) Moreover, the Eighth Circuit has previously explained that "alcohol use and drug use are relevant to our analysis, but 'intoxication and fatigue do not automatically render a confession involuntary.'" *United States v. Gaddy,* 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990)) (cleaned up); *see also United States v. Turner,* 157 F.3d 552, 555–56 (8th Cir.1998) (refusing to adopt a per se rule for intoxication).

Furthermore, based on the Court's review of the interview recording, Vue appeared to comprehend the conversations, understood the questions being asked of him, answered coherently and contextually, and was alert. (*See* Gov't Ex. 2.) Before Agent Mento asked Vue any questions, he read the *Miranda* rights aloud and asked whether Vue understood his rights, which Vue acknowledged that he did and signed the waiver. *See United States v. Gallardo*, 495 F.3d 982, 991 (8th Cir. 2007) (explaining that the signing of such a form "carries significant weight in determining whether [a defendant's] waiver was knowing and intelligent") (citing *North Carolina v. Butler*, 441 U.S. 369, 373

16

(1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver.")).[7]

Considering the totality of the circumstances and the current record, the Court concludes that Vue made a knowing and intelligent waiver of his *Miranda* rights.

\* \* \*

Having considered the parties' arguments and evidence, including Sergeant Lee's testimony and the recording of the February 26 interview, the Court concludes that Vue made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Accordingly, the Court recommends denying Vue's Motion.

### III.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT** Defendant's Motion to Suppress Any Statements Made by Defendant (Dkt. 19) be **DENIED**.

DATED: May 25, 2022                              *s/Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge

---

[7] Although Vue does not appear to make this argument, there is nothing to suggest that any potential use of methamphetamine or any other intoxicant caused Vue's will to be overborne.

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).